UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN SANTIAGO GARCIA,<br><br>    Plaintiff,<br><br>    v.<br><br>MARTIN O'MALLEY,<br>COMMISSIONER OF SOCIAL<br>SECURITY,[1]<br><br>    Defendant. | Case No. 1:22-cv-01307-DAD-HBK<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENY DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT, AND REMAND CASE TO THE COMMISSIONER OF SOCIAL SECURITY [2]<br><br>FOURTEEN-DAY OBJECTION PERIOD<br><br>(Doc. Nos. 16, 17) |

Adrian Santiago Garcia ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income under the Social Security Act. (Doc. No. 1). The matter is currently before the Court on the parties' briefs, which were submitted without oral argument. (Doc. Nos. 16-17). For the reasons set forth more fully below, the undersigned recommends the district court grant Plaintiff's motion for summary judgment, deny Defendant's cross-motion for

---

[1] The Court has substituted Martin O'Malley, who has been appointed the Acting Commissioner of Social Security, as the defendant in this suit. *See* Fed. R. Civ. P. 25(d).

[2] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2022).

summary judgment, and remand for further administrative proceedings.

## I. JURISDICTION

Plaintiff filed for supplemental security income on June 10, 2020, alleging a disability onset date of March 25, 2019. (AR 294-95). Benefits were denied initially (AR 84-106, 143-47) and upon reconsideration (AR 107-29, 160-65). A telephonic hearing was conducted before an Administrative Law Judge ("ALJ") on September 17, 2021. (AR 35-56). Plaintiff was represented by counsel, and testified at the hearing. (*Id.*). On September 29, 2021, the ALJ issued an unfavorable decision (AR 12-34), and on August 9, 2022, the Appeals Council denied review. (AR 1-6). The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

## II. BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 20 years old at the time of the hearing. (*See* AR 305). He was in special education classes in high school, and signed up for community college classes but dropped out because he did not get accommodations. (AR 44, 47). He lives with his mother and brother. (AR 45). Plaintiff has no past relevant work history. (AR 28, 43). Plaintiff testified that he can stand for three hours at most before he needs a break, he has dizzy spells a few times a week that last a few minutes, he needs reminders to do chores, he has anxiety attacks and isolates to keep calm, and he has difficulties with focus and concentration. (AR 44-45, 48-50). Plaintiff testified that he suffers from cerebral palsy and epilepsy. (AR 45). His seizures are less frequent due to medication, but he still has them weekly. (AR 46).

## III. STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a

conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## IV. SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. See 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(b).

////

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two. At this step, the Commissioner considers the severity of the claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of

adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## V. ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since June 10, 2020, the application date. (AR 17). At step two, the ALJ found that Plaintiff has the following severe impairments: cerebral palsy with left-sided hemiparesis; epilepsy; asthma; traumatic brain injury (TBI); a learning disorder; borderline intellectual functioning; depression; and anxiety. (AR 17). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (AR 17). The ALJ then found that Plaintiff has the RFC:

> to perform light exertional work as defined in the regulations with the following limitations: he is incapable of climbing ladders, ropes, and scaffolds; he is capable of occasionally crawling; he is capable of frequently climbing ramps and stairs and frequently balancing, stooping, kneeling, and crouching; he is capable of frequently reaching in all directions with the non-dominant left upper extremity; he is capable of frequently pushing and/or pulling with the non-dominant left upper extremity; he is capable of frequently handling, fingering, feeling, and grasping with the non-dominant left hand; he is capable of no more than occasional exposure to extreme temperatures, humidity, wetness, and "Atmospheric Conditions" as such term is defined in the Selected Characteristics of Occupations of the Dictionary of Occupational Titles (*i.e.*, "[e]xposure to conditions such as fumes, noxious odors, dusts, mists, gases, and poor ventilation that affect the respiratory system, eyes[,] or the skin"); he is incapable of working in an environment with bright lights (such as direct sunlight, stage lighting, or stadium lighting) and/or flashing lights (such as strobe lighting); he is capable of working in an environment with no more than a moderate noise level as defined by the Selected Characteristics of Occupations; he is able to perform work that does not require driving as a part of work duties or require any work-related exposure to hazards, such as unprotected heights and unguarded moving machinery; he is capable of traveling to and from a single workplace but is otherwise incapable of traveling for work; he is able to understand, remember, and carry out simple

5

>instructions and tasks and work at a consistent pace throughout the workday at simple tasks but not at a production rate pace where each task must be completed within a strict time deadline or within high quota demands; he is able to make occasional, simple work-related decisions in a job that involves only occasional changes in a routine work setting; he is able to sustain concentration and persist at simple tasks, as described, up to 2 hours at a time with normal breaks during an 8-hour workday; and he is capable of occasional interaction with the general public, co-workers, and supervisors.

(AR 22). At step four, the ALJ found that Plaintiff has no past relevant work. (AR 28). At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including bagger, marking clerk, and routing clerk. (AR 28-29). On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since June 10, 2020, the date the application was filed. (AR 29).

## VI.    ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him supplemental security income benefits under Title XVI of the Social Security Act. (Doc. No. 1). Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered the medical opinion evidence; and

2. Whether the ALJ erred at step five.

(Doc. No. 16 at 13-20).

## VII.    DISCUSSION

### A. Medical Opinions

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 404.1520c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; see 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 404.1520c(a) and (b). The factors for evaluating the

6

persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements"). 20 C.F.R. § 404.1520c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered. 20 C.F.R. § 404.1520c(b)(2). Supportability and consistency are explained in the regulations:

> (1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.
>
> (2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. 20 C.F.R. § 404.1520c(b)(2). However, when two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 404.1520c(b)(3).

The Ninth Circuit has additionally held that the new regulatory framework displaces the longstanding case law requiring an ALJ to provide "specific and legitimate" or "clear and convincing" reasons for rejecting a treating or examining doctor's opinion. *Woods v. Kijakazi*, 32 F.4th 785 (9th Cir. 2022). Nonetheless, in rejecting an examining or treating doctor's opinion as unsupported or inconsistent, an ALJ must still provide an explanation supported by substantial evidence. *Id.* This means that the ALJ "must 'articulate ... how persuasive' [he or she] finds 'all

7

of the medical opinions' from each doctor or other source ... and 'explain how [he or she] considered the supportability and consistency factors' in reaching these findings." *Id*. (citing 20 C.F.R. §§ 404.1520c(b), 404.1520(b)(2)).

Plaintiff argues the ALJ improperly rejected the December 2020 prior administrative medical finding ("PAMF") of agency reviewing physician Helen Patterson, M.D. (Doc. No. 16 at 13-18). Dr. Patterson opined that Plaintiff was moderately limited in his ability to understand and remember detailed instructions, carry out detailed instructions, sustain an ordinary routine without special supervisions, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, travel to unfamiliar places or use public transportation, and set realistic goals or make plans independently of others. (AR 99-102). Dr. Patterson additionally opined that Plaintiff was markedly limited in his ability to interact with the general public. (AR 101). The ALJ analyzed all the PAMFs jointly, including Dr. Patterson's, and found them only "somewhat persuasive." (AR 26-27).

Plaintiff argues the ALJ's analysis is "fatally flawed for a number of reasons… For instance, reviewing physician Patterson found marked limitations in Plaintiff's ability to appropriately interact with the general public. (AR 101). The ALJ, on the other hand, . . . ruled that Plaintiff still possesses the capacity to interact occasionally with the public. (AR 22). While the ALJ is certainly entitled to reach this finding, she may not do so without supporting her finding with substantial evidence. However, in the instant matter, the ALJ offered no explanation." (Doc. No. 16 at 14-15). Defendant argues the form completed by Dr. Patterson "clearly explains" that "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s)"; and further cites Dr. Patterson's narrative opinion that "[d]espite possible limitations estimated in the checklist above, the claimant retains adequate ability to complete simple and most detailed tasks and to maintain adequate attention, concentration, persistence, and pace, as needed to sustain a normal workday and workweek. Per [medical history], the claimant may need some additional assistance when initially learning a task." (Doc. No. 17 at 5). According to Defendant, the Court should decline to "accept Plaintiff's invitation to

8

extend the state agency consultant's opinions to earlier parts of the form that are clearly excluded by its plain language." (*Id*.).

However, a plain reading of the ALJ's decision reveals that his consideration of Dr. Patterson's opinion was limited to her findings regarding the "'B' criteria of the listings" as part of the psychiatric review technique used to determine the degree of functional limitation at steps two and three of the sequential analysis. (AR 91-92, 26); *see Garcia v. Comm'r of Soc. Sec*., 2022 WL 2110709, at *10 ("the limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process."). Thus, while Defendant is correct that the cited narrative portion of the agency disability determination is arguably consistent with the ALJ's assessed RFC, the Court is not permitted to consider this reasoning because the ALJ did not evaluate Dr. Patterson's findings as to Plaintiff's RFC as part of the narrative discussion or otherwise. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226 (9th Cir. 2009) (the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). Moreover, as argued by Plaintiff, the ALJ failed to consider Dr. Patterson's opined "social interaction limitations" including the finding that Plaintiff was markedly limited in interacting appropriately with the general public, nor did the ALJ address Dr. Patterson's "narrative form" opinion that "[d]ue to report of heightened anxiety in stores, the claimant may not be capable of managing a job working with the general public." (AR 101-02). Accordingly, the ALJ failed to either provide reasons, supported by substantial evidence, to reject the limitation on interaction with the general public opined by Dr. Patterson, or to properly incorporate the limitation into the assessed RFC. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (failure to address medical opinion was reversible error); *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 886 (9th Cir. 2006) ("an ALJ is not free to disregard properly supported limitations"); *see also* Social Security Ruling (SSR) 96-8p, 1996 WL 374184, at *7 ("If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted."). This constitutes error.

Further, the reviewing court cannot consider an error harmless unless it "can confidently conclude that no reasonable ALJ, when fully crediting the [evidence], could have reached a different disability determination." *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006). Here, because there was no testimony from the vocational expert regarding a limitation on interaction with the general public, the Court cannot confidently conclude that the disability determination would remain the same were the ALJ to fully credit this portion of Dr. Patterson's findings. *See Hill*, 698 F.3d at 1161 (when the ALJ improperly ignores significant and probative evidence in the record favorable to a claimant's position, the ALJ "thereby provide[s] an incomplete . . . [disability] determination."). Based on the foregoing, the Court finds the ALJ erred by failing to properly reject the limitations opined by Dr. Patterson, including limitations on social interaction, or incorporate them into the assessed RFC. On remand, the ALJ must reconsider Dr. Patterson's findings along with the relevant medical opinion evidence.

**B. Step Five**

Plaintiff additionally argues that the ALJ failed to resolve conflicts between the vocational expert testimony and the Dictionary of Occupational Titles, and thereby failed to meet the Commissioner's burden at step five to show a significant number of jobs exist in the national economy that Plaintiff can perform. (Doc. No. 16 at 18-20). Because the analysis at step five is dependent on the ALJ's reevaluation of the medical opinion evidence, the Court declines to address this challenge here. On remand, the ALJ is instructed to reconsider the medical opinion evidence, and conduct a new sequential analysis considering all of the evidence in the record, including a reassessment of the RFC and step five finding if necessary.

**C. Remedy**

Plaintiff contends that the proper remedy in this case is a remand for further administrative proceedings. (Doc. No. 16 at 21); *see Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). The Court agrees. Here, the ALJ improperly considered the medical opinion evidence, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by

substantial evidence.  "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101.  Thus, the undersigned recommends the case be remanded for further proceedings.  On remand, the ALJ should reconsider the PAMFs and medical opinion evidence, and provide legally sufficient reasons for evaluating the opinions, supported by substantial evidence.  If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from medical experts.  Finally, the ALJ should reconsider the remaining steps in the sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

Accordingly, it is **RECOMMENDED**:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 16) be GRANTED.
2. Defendant's Cross Motion for Summary Judgment (Doc. No. 17) be DENIED.
3. Pursuant to sentence four of 42 U.S.C.§ 405(g), the Court REVERSE the Commissioner's decision and REMAND this case back to the Commissioner of Social Security for further proceedings consistent with this Order.
4. The district court direct the Clerk to enter judgment in favor of the Plaintiff, terminate any pending motions/deadlines, and close this case.

////
////
////

## NOTICE TO PARTIES

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1).  Within 14 days after being served with a copy of these Findings and Recommendations, a party may file written objections with the Court.  *Id*.; Local Rule 304(b).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations."  The assigned District Judge will review these Findings and Recommendations under 28 U.S.C. § 636(b)(1)(C).  A party's

failure to file objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

Dated: April 11, 2024

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE